IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARCUS ANDREW STROM, | Case No. 2:21-cv-00534-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| BRAD CAIN *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Marcus Andrew Strom ("Strom"), an individual in the custody of the Oregon Department of Corrections ("ODOC"), filed this action against Brad Cain, superintendent of Snake River Correctional Institution ("SRCI"), ODOC employees Jason Bell, Joe Woodland, Monica Landaverde, Brian Kropp, Shere' Baxter, Michelle Grendahl, and John Does 1-5 (together, "Defendants") for claims related to Strom's treatment while confined in SRCI's COVID-19 infirmary unit (the "COVID Unit"). (ECF No. 2.)

///

///

///

PAGE 1 – OPINION AND ORDER

Now before the Court are Plaintiff's Motion for Partial Summary Judgment (ECF No. 30) and Defendants' Motion for Summary Judgment (ECF No. 32). All parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. The parties requested oral argument on their respective motions, but the Court finds the motions suitable for disposition without oral argument. *See* LR 7-1(d)(1).

For the reasons that follow, the Court grants in part Defendants' Motion for Summary Judgment and holds in abeyance Plaintiff's Motion for Partial Summary Judgment pending further briefing.

## BACKGROUND[1]

From July 28, 2020, through August 11, 2020, Strom was housed in SRCI's COVID Unit. (Decl. of Marcus Andrew Strom ("Strom Decl.") ¶ 2.) On July 31, 2020, Strom was able to take his first shower since transferring to the COVID Unit. (*Id.* ¶ 3.)

On August 1, 2020, Strom soiled himself, and defendant Doe 5 provided Strom with a 48-pack of wet wipes but denied Strom a shower. (*Id.* ¶ 4.) Strom's inability to clean himself resulted in a rash.[2] (*Id.*) On August 2, 2020, defendant Doe 1 denied Strom a shower because of a "lack of clothing." (*Id.* ¶ 5.)

On August 3, 2020, after repeated requests, defendant Doe 2 denied Strom a shower and then threatened to send Strom to "the hole." (*Id.* ¶ 6.) In response, Strom used a piece of plastic to make minor cuts on his arm and neck. (*Id.*) Strom reported his emotional state to defendant Kimball. (*Id.* ¶ 7.) Strom then met with QMHP (Qualified Mental Health Provider) Ann

---

[1] Unless otherwise noted, the following facts are undisputed or presented in the light most favorable to the non-moving party.

[2] Strom's claim that he developed a rash is the only fact Defendants dispute. (*See* Defs.' Mot. for Summ. J. ("Defs.' Mot.") at 7, ECF No. 32.)

Mallory,[3] whom Strom alleges passed along his concerns about his hygiene and lack of showers "to those in charge." (*Id.*)

On August 4, 2020, Strom met with defendant Grendahl for a suicide assessment, after which Strom was able to shower. (*Id.* ¶¶ 8-9.) At this point, Strom had a rash on his "upper thighs, bottom, and genital area." (*Id.* ¶ 9.) Strom was placed on suicide watch and moved to a "camera cell," where Strom noticed dried blood on the floor and walls. (*Id.* ¶¶ 10-11.) Strom told defendant Doe 1 about the blood in the cell on August 4, 2020, but defendant Doe 1 informed Strom that the blood could not be cleaned because of Strom's suicide watch status. (*Id.* ¶ 11.) On August 5, 2020, Strom notified defendant Doe 3 of the blood, and defendant Doe 3 also stated that nothing could be done because of Strom's suicide watch status. (*Id.* ¶ 12.)

That same day, after yelling at defendants Kropp and Baxter about his suicide watch status and conditions of confinement, Strom began coughing, causing him to soil himself. (*Id.* ¶¶ 14-15.) Strom notified defendant Doe 4 that he had soiled himself and defendants Doe 4, Kropp, Baxter, and Grendahl accused Strom of soiling himself on purpose. (*Id.* ¶ 15.) Three hours after Strom reported that he had soiled himself, defendant Kropp provided Strom with three rags and a smock but denied Strom a shower and cleaning supplies. (*Id.* ¶ 16.)

On August 7, 2020, Strom was provided a shower. (*Id.*) Strom slept on a soiled mattress until he left the COVID Unit on August 11, 2020.[4] (*Id.*)

---

[3] Strom did not name QMHP Mallory as a defendant in this case, and Strom states, "Ms. Mallory had worked closely with [him] 2 years prior" and "seeing Ms. Mallory has been a relief." (Pl.'s Br. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Resp.") at 2, ECF No. 43.)

[4] Strom alleges new facts in his response to Defendants' Motion for Summary Judgment related to his causes of action, including but not limited to a new allegation that his pain, suffering, and physical injury were "resulting from COVID-19 infection." (Pl.'s Resp. at 5, 8-9, Attach. 1.) While it is undisputed that Strom tested positive for COVID-19, his COVID status is not the basis for any of the claims in his complaint. Importantly, Strom did not allege in his

PAGE 3 – OPINION AND ORDER

Strom filed the present action on April 8, 2021, alleging claims under the Eighth and Fourteenth Amendments.[5] (Compl. at 3-4.) On August 30, 2021, Strom moved for partial summary judgment on all claims against the named defendants, but not against the five Doe defendants. (Pl.'s Mot. For Partial Summ. J. ("Pl.'s Mot."), ECF No. 30.) On September 3, 2021, Defendants moved for summary judgment on all of Strom's claims, on the ground that Strom has failed to allege a physical injury as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e). (Defs.' Mot. at 2.)

## ANALYSIS

### I.      STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith*

---

complaint that he was denied medical care related to COVID-19, nor does he allege that Defendants were deliberately indifferent to his COVID-19 medical needs. Strom may not use summary judgment briefing to expand the allegations in his complaint. *See Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (simplified).

[5] Strom also alleged claims under 42 U.S.C. § 2000dd(a)-(d) and 42 U.S.C. § 2000dd-0(1)-(2), which do not apply here because Strom was not in the custody or under the physical control of the United States government.

PAGE 4 – OPINION AND ORDER

*Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

Where parties file cross motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (simplified); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## DISCUSSION

Defendants move for summary judgment on all of Strom's claims. As explained below, the Court concludes that Strom has failed to allege anything more than a *de minimis* physical injury and therefore the PLRA bars his claims for mental or emotional injury. However, the PLRA does not otherwise bar Strom's claims. Accordingly, the Court grants Defendants' Motion for Summary Judgment with respect to Strom's claim for emotional distress damages, but otherwise denies the motion.

Strom moves for summary judgment on his claims against all of the named defendants. As explained below, the Court requires supplemental briefing from Defendants before resolving Strom's motion.

**I.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants argue that the Court should enter summary judgment on all of Strom's claims because the PLRA bars Strom's claims in the absence of a physical injury. The Court disagrees.

///

A.     The PLRA's Physical Injury Requirement

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted the PLRA[.]" *Jones v. Bock*, 549 U.S. 199, 202 (2007). "[T]he PLRA mandates early judicial screening of prisoner complaints and provides, in relevant part, that '[n]o federal or civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury.'" *Id.* (citing 42 U.S.C. § 1997e(e)).

In analyzing the scope of § 1997e(e), the Ninth Circuit has held that "[t]o the extent that [a plaintiff] has actionable claims for compensatory, nominal or punitive damages—premised on violations of [constitutional] rights, and not on any alleged mental or emotional injuries . . . the claims are not barred by § 1997e(e)." *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002) (holding that "§ 1997e(e) applies only to claims for mental and emotional injury"). Thus, the PLRA requires a showing of physical injury only if a plaintiff's claims are based on mental or emotional distress suffered as a result of an alleged constitutional violation. Where an adult in custody's complaint "seeks a broader form of redress for the underlying constitutional violations alleged," such as nominal or punitive damages, Section 1997e(e) does not bar such relief. *Id.* (holding that punitive and nominal damages are available to redress constitutional violations even in the absence of physical injury).

B.     Analysis

Strom alleges that Defendants were "deliberately indifferent to serious medical needs, inhumane conditions of confinement, need for reasonable sanitation and basic elements of hygiene." (Compl. at 5.) Strom seeks compensatory and punitive damages from all of the named defendants for violating his constitutional rights. (*Id.* at 8.) Defendants move for entry of summary judgment on Strom's claims because he has failed to allege a physical injury as the PLRA requires. (Defs.' Mot. at 2.)

### 1. Strom's Allegations

Strom's claims focus on Defendants' failure to provide him with showers, clean clothing and bedding, and a clean cell. As an initial matter, the Court notes that the Eighth Amendment's reach extends to an adult in custody's basic "sanitation." *See Wright v. Rushen*, 642 F.2d 1129, 1132-33 (9th Cir. 1981) ("An institution's obligation under the eighth amendment is at an end if it furnishes [adults in custody] with adequate food, clothing, shelter, sanitation, medical care, and personal safety.") (simplified). The Ninth Circuit has recognized that the right to "sanitation" includes the right to showers and cleaning supplies. *See, e.g.*, *Toussaint v. McCarthy*, 801 F.2d 1080, 1110-11 (9th Cir. 1986) (affirming the district court's order that shower facilities for adults in custody be equipped with hot and cold water, and noting that the district court "found showers necessary to protect the plaintiff's interest in proper shelter, sanitation, and medical care") *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 482-83 (1995); *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1984) ("Failure to provide adequate cell cleaning supplies, under circumstances such as these, deprives inmates of tools necessary to maintain minimally sanitary cells, seriously threatens their health, and amounts to a violation of the Eighth Amendment."); *but see Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995) (holding that although subjecting an individual in custody to "lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment," confining individuals to a dirty cell for short periods of time did not violate the Eighth Amendment).

### a. No Bedding Exchange or Cell Sanitation, Limited Showers (First Claim)

Strom alleges in his first claim that defendants Cain, Bell, Woodland, and Landaverde were deliberately indifferent to his serious medical needs and subjected Strom to "inhumane conditions of confinement," in violation of his constitutional rights under the Eighth

PAGE 7 – OPINION AND ORDER

Amendment. (Compl. at 5.) Strom claims he suffered "pain, injury[, and] suffering" when he "received no bedding exchange, cell sanitation, and only received [four] showers" while housed in the COVID Unit, and that defendants Cain, Bell, Woodland, and Landaverde are "culpable for failing to create policies and provide qualified staff for COVID-19 patients in the infirmary." (*Id.*)

Strom does not plead any details regarding his "pain and suffering" and only generally alleges that "daily showers and hygiene [] would help reduce COVID-19 symptoms . . . ." (*Id.*) Thus, Strom has not demonstrated any physical injury related to his first claim for relief.

### b. Lack of Shower after Soiling Himself (Second Claim)

Strom alleges in his second claim that after he soiled himself, (1) "John Doe 5 gave [Strom] a 48 pack of wipes, which proved to be useless . . . ," (2) John Doe 1 "denied [Strom] a shower citing 'lack of clothes,'" and (3) John Doe 2 "threatened [Strom] with punishment for pushing [the] button in his cell to request emergency shower," all of which violated his constitutional rights under the Eight Amendment. (*Id.* at 6-7.) Strom claims the action or inaction of defendants Doe 1, Doe 2, and Doe 5 was deliberately indifferent to Strom's serious medical needs and constitute "inhumane conditions of confinement, need for reasonable sanitation, and basic hygiene elements." (*Id.*) Strom alleges he suffered "physical pain [and] injury in the form of severe rash" caused by "his uncleaned excrement." (*Id.*)

Defendants have provided evidence in a sworn declaration that Strom never reported a rash or skin complaint to medical staff at any time while he was housed in the COVID Unit, and if he had reported a rash, Strom's medical records would include a note and treatment records. (Decl. of Judy Bradford ¶¶ 3-4, Attach. 1.) In response, Strom alleges that the medical records are not complete, but notably, he does not allege that he sought medical attention for his rash. (Pl.'s Resp. at 9.)

PAGE 8 – OPINION AND ORDER

Even if the Court accepts as true that Defendants' actions caused Strom's rash, courts have consistently held that a rash is a *de minimis* injury insufficient to satisfy the PLRA's physical injury requirement. *See, e.g.*, *Howard v. Barney*, No. 2:17-CV-01807-JAM-DB, 2019 WL 2448437, at *3 (E.D. Cal. June 12, 2019) (holding that "a skin rash suffered while in custody—on its own—is a *de minimis* physical injury that does not give rise to a claim for emotional or mental damages"); *Covarrubias v. Foxworth*, No. 6:13CV812, 2016 WL 4836864, at *4 (E.D. Tex. Sept. 14, 2016) (adopting a magistrate judge's finding that a plaintiff's "rash for which he acknowledges that he did not seek medical care and which apparently cleared up on its own" was not a showing of physical injury under the PLRA); *Dolberry v. Levine*, 567 F. Supp. 2d 413, 418 (W.D.N.Y. Jul. 28, 2008) ("Although plaintiff does allege that he suffered a skin rash due to the lack of showers, that is a *de minimis* injury that does not give rise to a claim.") (*citing Brown v. Pierce*, No. 05-1322, 2008 WL 619288, at *5 (C.D. Ill. Mar. 4, 2008) (noting that "several courts have held that a rash resulting from cell conditions is a *de minimis* injury that does not rise to the level of a constitutional violation") (collecting cases)); *but see Thompson v. Paleka*, No. CV 17-00531 SOM-KJM, 2017 WL 5309608, at *6 (D. Haw. Nov. 13, 2017) ("This court is certainly not saying that a rash can never present a serious medical need. But [plaintiff] fails to allege facts showing that, objectively, the dirty showers or his rash were 'sufficiently serious.'") (citation omitted). The Court finds that Strom has failed to demonstrate that Defendants' actions caused more than a *de minimis* physical injury with respect to his second cause of action.

          **c.**      **Blood in Cell (Third Claim)**

Strom alleges in his third claim for relief that on August 4, 2020, after he was placed in a cell for suicide watch, he reported that a previous adult in custody's dried blood was "smeared

. . . on the floor [and] spatter[ed] on wall." (Compl. at 6.) Strom claims that John Doe 1 stated "due to [Strom's] suicide watch status . . . nothing could be done," "John Doe 3 stated blood couldn't be cleaned until [Strom] was removed from [suicide watch status]," and after Strom was removed from suicide watch status he was "made to clean the blood himself." (*Id*.) Strom alleges John Doe 1, John Doe 3, and defendant Landaverde exposed Strom to "degrading, inhumane conditions of confinement" and "expos[ed Strom] to prolonged suffering, creating risk of further infections due to [suicide watch] status." (*Id*.) Strom has not demonstrated any physical injury associated with his third claim.

### d. Lack of Shower after Soiling Himself, Accusation of Soiling Himself on Purpose, and Sleeping on a Soiled Mattress (Fourth Claim)

Finally, Strom alleges that after "yelling at [defendants] Baxter and Kropp about his conditions of confinement," Strom began coughing and soiled himself. (*Id*. at 7.) Strom claims to have then "notified John Doe 4 via intercom," and that in response, John Doe 4, Kropp, Baxter, and Grendahl directly and indirectly accused Strom of "soiling himself on purpose." (*Id*.) Strom also claims that three hours after he soiled himself, Kropp had given him three dry rags and a new smock, Baxter had not attempted to check on Strom, and that Grendahl met with Strom but made no efforts to change Strom's "unsanitary, inhumane conditions." (*Id*.) Strom claims that because he "received no shower, sanitation or hygiene" for two days after soiling himself, and because he had to sleep on a "soiled mattress" for six days, John Doe 1, Kropp, Baxter, and Grendahl violated his constitutional rights and were "deliberately indifferent to serious medical needs [and] inhumane conditions of confinement." (*Id*.) Strom has not demonstrated a physical injury associated with any of the alleged constitutional violations in his fourth claim for relief.

///

///

PAGE 10 – OPINION AND ORDER

### 2. Conclusion

Strom has not demonstrated more than a *de minimis* physical injury related to any of his claims. In the absence of a physical injury, the PLRA bars Strom from seeking compensatory damages for any alleged mental or emotional injury. However, the PLRA does not bar Strom from seeking damages unrelated to mental or emotional injury, to include nominal and punitive damages.[6] *See Oliver*, 289 F.3d at 629-30; *see also Pompa v. Bowser*, No. 2:19-cv-00628-MO, 2020 WL 6287471, at *4 (D. Or. Oct. 27, 2020) ("Even if an inmate is barred by § 1997e(e) from claiming mental or emotional injury, the inmate may still seek other forms of redress unrelated to mental or emotional injury." (citing *Oliver*, 289 F.3d at 629-30)); *Dillon v. Clackamas Cnty.*, No. 3:14-cv-00820-YY, 2018 WL 4523139, at *7 (D. Or. May 2, 2018) ("As in *Oliver*, plaintiffs' claims for compensatory, nominal, and punitive damages premised upon violations of their constitutional rights, and not on alleged mental or emotional injuries, are not barred by § 1997e(e)."). Accordingly, the Court grants Defendants' Motion for Summary Judgment only with respect to Strom's claim for compensatory damages for mental or emotional injury.

## II. STROM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants oppose Strom's motion for partial summary judgment on the ground that the PLRA bars his claims as discussed above, and also on the ground of qualified immunity. (Defs.' Resp. to Pl.'s Mot. for Summ. J. ("Defs.' Resp.") at 2.)

///

---

[6] Although Strom does not specifically state a claim for "nominal" damages, a self-represented litigant's complaint is not required expressly to seek nominal damages if the allegations in his complaint are consistent with a claim for nominal damages. *See Oliver*, 289 F.3d at 629-30 (recognizing that courts construe a self-represented plaintiff's complaint liberally and finding that the adult in custody's "complaint seeks punitive damages and is consistent with a claim for nominal damages even though they are not expressly requested").

PAGE 11 – OPINION AND ORDER

A.  **The PLRA**

As discussed above, Strom's claims survive because although the PLRA bars his claims for emotional distress damages, he may proceed on his claims alleging other damages.

B.  **Qualified Immunity**

Defendants also oppose Strom's motion for partial summary judgment on the ground that they are entitled to qualified immunity. (Defs.' Resp. at 2.) Courts determine whether qualified immunity applies by analyzing "whether there has been a violation of a constitutional right[,]" and, if so, "whether that right was clearly established at the time of the [official's] alleged misconduct." *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019), *cert. denied sub nom. Jessop v. City of Fresno, Cal.*, 140 S. Ct. 2793 (2020), *reh'g denied*, 2020 WL 4429721 (Aug. 3, 2020) (citation omitted).

Defendants argue that the doctrine of qualified immunity protects them from liability here because "there was no constitutional violation" and "Defendants did not knowingly violate the law." (Defs.' Resp. at 3.) With respect to whether Strom has established a constitutional violation, Defendants rely only on their argument that Strom's claims fail in the absence of a physical injury. (*Id.*) The Court disagrees for the reasons discussed herein. In addition, viewing the evidence in the light most favorable to Strom, the Court cannot conclude that Strom has failed to establish a constitutional violation.

Furthermore, Defendants make no effort to demonstrate that the right to timely showers and a clean cell were not clearly established at the time of the relevant events. On the contrary, as Strom correctly points out, the Supreme Court recently held in a similar case involving exposure to feces in a cell for an extended period of time that the Fifth Circuit erred in granting qualified immunity to prison officials, because "no reasonable correctional officer could have concluded that . . . it was constitutionally permissible to house [an individual in custody] in such deplorably

unsanitary conditions for such an extended period of time." *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)) (simplified); *see also Toussaint*, 801 F.2d at 1110-11 (affirming district court's finding that showers are "necessary to protect the plaintiff's interest in proper shelter, sanitation, and medical care"), *overruled on other grounds by Sandin*, 515 U.S. at 482-83; *cf. Walsh v. Gower*, No. 2:18-CV-00098-HZ, 2020 WL 1149912, at *5 (D. Or. Mar. 9, 2020) (holding that qualified immunity did not apply to the defendants' refusal to provide a shower because "a reasonable officer in [d]efendants' position would understand that it was unlawful to ignore [an adult in custody's] complaints of pain and deny [the adult in custody] the opportunity to decontaminate after secondary exposure to [pepper] spray"). In light of these authorities, Defendants have not met their burden of demonstrating that they are entitled to qualified immunity here.

Defendants did not otherwise address the merits of Strom's claims in their response to Strom's motion for partial summary judgment. It would benefit the Court's resolution of Strom's motion if Defendants provide supplemental briefing, to include citations to case law, on the issue of whether leaving Strom in his Covid Unit cell while soiled with feces and without access to a shower violated his constitutional rights, including a defendant-by-defendant assessment of Strom's deliberate indifference claims and a response to Strom's statement of undisputed facts.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART Defendants' Motion for Summary Judgment (ECF No. 32) and enters judgment for Defendants on Strom's claim for compensatory damages related to mental or emotional injury, but otherwise allows Strom's claims to proceed.

The Court HOLDS IN ABEYANCE Plaintiff's Motion for Partial Summary Judgment (ECF No. 30) pending further briefing. Defendants shall submit supplemental briefing as discussed herein by January 18, 2022, Strom may file a response to the supplemental briefing by

PAGE 13 – OPINION AND ORDER

February 8, 2022, and the Court will take the motion under advisement upon receiving Strom's response.

The Court GRANTS Strom's motion to compel (ECF No. 42), and lifts the Court's stay of discovery to ORDER Defendants to respond to Strom's pending requests for admission by January 18, 2022, if Defendants have not already responded. Strom has a right to the requested discovery prior to responding to Defendants' supplemental briefing on the merits of his claims, and to identify the Doe defendants.[7]

DATED this 28th day of December 2021.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[7] Whether or not the Court grants Strom's motion for partial summary judgment, his claims against the Doe defendants will proceed because Strom did not move for summary judgment on his claims against the Doe defendants.

PAGE 14 – OPINION AND ORDER